Brockenbrough, J
The question which the pleadings intended to present, and which has been most elaborately argued here, is, whether the defendant Carthrae was legally in custody, under the execution sued out against him, at the time when the bond for the liberty of the prison rules was executed. It is contended, that as by the voluntary escape of the debtor, the sheriff had no legal authority to retake him, he could not legally detain him, although he voluntarily surrendered himself into custody. The counsel for the appellant admits, that the creditor, not having consented to his discharge, might have retaken him, but as he did not retake him, the debtor could not be considered as a true prisoner when he voluntarily returned to the jail, unless the creditor elected to hold him as his prisoner, and as no such election is shewn before the prison-bounds bond was executed that bond is void.
*271 I shall briefly examine this question. It is said in 2 Bac. Abr. Escape. C. p. 515. that “ it was formerly held, that where the sheriff suffered a prisoner in execution to make a voluntary escape, the prisoner was, in such case, absolutely discharged from the creditor, and that the right of action was entirely transferred against the sheriff, who by means of such escape became debitor ex delictofor which Arundel v. Wytham, Leon. 73. and the case of The Sheriff of Essex, Hob. 202. are cited. The consequence of that doctrine was, that the creditor was put completely in the power of the sheriff, and the fault of that officer had the singular effect of releasing the debtor from the claim of the creditor. The principle was soon afterwards repudiated by the courts in England. The .case of Trevilian v. Lord Roberts is thus reported in 1 Rolle’s Abr. 902. pl. 8. 11 Vin. Abr. Execution. U. a. pl. 8. p. 26. “ If A. be in execution at the suit of B. and escape with the assent of the sheriff, and after the sheriff retakes him, and keeps him in prison, he shall be in execution to B., because though B. may bring an action against the sheriff for this voluntary escape, yet it is at his election, for the party in execution shall not by his own wrong, put B. to his action against the sheriff against his will, and it may be that the sheriff is not able to give him rccompence.” This judgment of the court (Hill. 10 Car. 1.) was on an audita querela, which the debtor had sued out against his creditor; and it is there said, that The Sheriff of Essex’s case in Hobart, is not law. The same case is also reported in Rolle, under the head of Audita Querela, and is found in 3 Vin. Abr. Audita Querela. D. pl. 4. p. 326. with this only essential difference, that the latter speaks of A.’s returning to jail voluntarily, whilst in the former it is said that the sheriff retook him. A more direct and conclusive authority can hardly be found. It establishes the proposition, that in case of a voluntary escape, and recaption by the sheriff, and detention by him of the prisoner, he shall be in execution to the creditor. It is not necessary that the creditor should express his assent to his being in execution to him, nor by any order or direction, either oral or in *272 writing, charge him in execution; for, according to the case, “ he shall be in execution to B.” It establishes the proposition,-that it is in the election of the creditor to bring an action against the sheriff for the voluntary escape; and if he eiects to bring such action, he thereby manifests his intention not to consider the debtor as being in execution to him. It shews, that if the creditor does not bring such action, the debtor is his true prisoner of course, and without any further action on his part. It gives the best reasons why this result should take place. The debtor in execution shall not, by his own misconduct, compel the creditor to look to the sheriff as his debtor, whether the creditor will or no; and besides, the sheriff maybe unable to make him recompense. Such a rule as that adopted in the case in Hobart, would put the creditor completely in the power of an insolvent debtor and fraudulent sheriff, who should choose to combine for the purpose of cheating him out of his just rights.
This important case has been followed by others leading to the same result. Alanson v. Butler, 1 Lev. 211. was a scire facias to shew cause why an execution should not issue on a judgment; the defendant pleaded, that he had been taken in execution on the judgment, and was after-wards permitted voluntarily to escape; the plaintiff demurred : and the resolution of the court was, that a voluntary escape by the jailor, without the plaintiff’s assent, should not prejudice the plaintiff, but that he may bring a new execution. The same case is reported in Siderfin 330; where it is said by the court, that if a party in execution escape by negligence, he may be retaken either by the sheriff, or by the plaintiff; but if he escape by the good will of the she-' riff, he shall not, but the plaintiff may, retake him, for otherwise it might be that the plaintiff, either by the death or by the insufficiency of the sheriff, would be without remedy. The above decision was by lord Hale, and the principle was afterwards affirmed by Holt, another great luminary of the english bench. Buxton v. Home, 1 Shower 174. I admit that these decisions do not extend as far as that in Rolle, for the cases did not require it, but the principle is,-1 think, the -same.
*273 The class of cases, in which the creditor has been allowed to bring debt against a succeeding sheriff or warden, where there has been an escape permitted by the first sheriff or warden, then a voluntary surrender of himself to the first officer, and another escape permitted by the second officer, seem to me to be strong confirmations of the principles established in the case in Rolle. In those cases, the question was, whether the debtor, on his voluntary return to jail, and his surrendering himself to the custody of the first officer, was a true prisoner, and whether he was so in execution as that the second escape permitted by the second officer would entitle the plaintiff to the action against the second officer. In defence of the second warden, it was insisted, that there having been once a voluntary escape, the party could not be in execution again without new process. But the defence was overruled, and the court, in effect, decided, that on the debtor’s return to jail after a voluntary escape, he was a true prisoner at the election of the creditor; and that such election was made manifest by the action which he brought against the second warden. In each of those cases, judgments were rendered against the second warden, which could not have been done, if the courts had not considered, that the debtor was a true prisoner when he surrendered himself, and continued such true prisoner when lie was turned over in custody to the second officer. I refer to James v. Peirce, Ventr. 269. S. C. 2 Lev. 132. and Lenthall v. Lenthall, 2 Lev. 109. In both of the reports of the former case, the case of Trevilian v. Lord Roberts is relied upon as good law. The same point was again decided in Grant v. Southers, 6 Mod. 183. Grant had been in custody of the first marshal, who permitted him to escape. Grant voluntarily returned, and being found in custody by the succeeding marshal was detained by him. Grant brought false imprisonment against the second marshal, and the court affirmed that it was lawful for the second marshal to detain him, and if he allowed him to go at large, it would be an escape in the second marshal.
*274 The case of Ravenscroft v. Eyles, warden of the fleet, 2 Wils. 294. was relied on to shew, that Carthrae, in this case, could not be considered as a true prisoner, and therefore the bond was void. I have examined the case, and I am satisfied, that the judgment of the court on the questions before it, is not in opposition to the cases from Trevilian v. Lord Roberts down to Grant v. Southers; but I admit there is a dictum of chief justice Wilmot, which may be in opposition to them. The case was this: Warren, a debtor, had been committed to the warden of the fleet, on mesne process, and the warden permitted him to escape, but Warren returned to the fleet the same day, and continued in the prison. The creditor proceeded to judgment against Warren, but did not sue out an execution. He then brought his action on the case against the warden of the fleet for the escape, and obtained a judgment against him. The warden by permitting the escape, had committed a tort, and the creditor had a right of action against him. By bringing the action against the warden, the creditor elected to consider the debtor out of execution. The chief justice, however, went on to remark—“ Warren is not now a prisoner at the suit of the plaintiff, though locked up every night, and though the plaintiff might lawfully proceed to judgment against him, yet he could not charge him in execution.” This is a loose remark of the judge, and is not entitled to much weight. If he meant that Warren was not now a prisoner at the suit of the plaintiff, because the plaintiff had sued the warden, and therefore elected not to consider him as his prisoner, or as being in execution, the remark was true, and perfectly consistent with the previously adjudged cases: but if he meant, that the creditor could not, previously to his action brought against the warden, have considered him his prisoner, or charged him in execution, the opinion was extrajudicial, and in opposition to the former settled course of decision. If the case before the court had been an application to charge the debtor in execution, or an audita querela by the debtor against the creditor, I do not think that such a remark would have been made.
*275 Having adverted to as many of the adjudged cases as I think necessary, I shall say a few words on the case before us. Carthrae was taken under a ca. sa. at the suit of Clarke, by the sheriff, who permitted him to go at large under an engagement, that he woidd surrender himself in execution to the sheriff, by a certain day. He did so surrender himself before the return of the writ, and the sheriff received, and detained him in custody. The creditor, Clarke, did not consent to this arrangement; it was solely the act of the officer and the debtor. That consent being wanting, I think it follows of course, according to the authorities, that Carthrae was in execution at the suit of Clarke, as soon as he returned, and that Clarke not having sued the sheriff for the escape, the sheriff rightly placed him in arcta et salsa custodia. The prison-bounds bond was then taken; and I am of opinion, that it was a good and legal bond.
Another question was raised in the argument on the pleadings. It was objected by the appellants’ counsel, that the replication ought to have concluded with a verification, .and Beech v. Foushee, 1 Leigh 64. was relied on to prove that where a plea in bar, or replication, erroneously concludes to the country, it is bad on general demurrer. The cases from Siderfin and Lutwyche, referred to by judge Green, certainly support the opinion wliich he expressed in that case; to which I will add, that the case of Roberts v. Mariett, 2 Saund. 190. shews, that where a rejoinder erroneously concludes with a verification, it is bad on general demurrer. Those cases were, however, decided before the statute of Anne, and I am satisfied that as they are not good law in England at this day, 2 Wms. Saund. 190. note 5. so they are not law in this state since the passage of our statute of jeofails in 1789, and probably, not since the act of 1753; 1 Robinson’s prac. 638. I understand the opinion expressed by judge Green on that point, was not that of the court, and is not, therefore, to be held, as binding authority.
The editor of our present revised code in his marginal note on the statute of jeofails, vol. I. ch. 128. § 101. has referred to the statute of 27 Elia. ch. 5. as being the one *276 from which that section was taken. I am persuaded it was founded on the statute 4 and 6 Ann. ch. 16. which was itself an amendment of the statute of Elizabeth. There appears to be a considerable variance between our section and S{;atute 0f Elizabeth. The latter enacts, that “ after demurrer joined &c. the judges shall proceed, and give judgment, according as the very right of the cause and matter in law shall appear unto them, without regarding any imperfection, defect, or want of form &c. except those only which the party demurring shall specially set down &c.” Our statute leaves out the words want of form, and enacts, that “when a demurrer shall be joined &c. the court shall not regard any other defect, or imperfection than what shall be specially alleged in the demurrer as causes thereof &c.” If the section had stopped there, the court would not probably have regarded any defect or imperfection whatever, whether of form or substance, which was not specially set down in the demurrer as a cause thereof, which would have abolished general demurrers,' but the legislature did not choose to give careless pleaders so wide a range; and therefore added the words “ unless something so essential to the action, or defence, as that judgment according to law, and the very right of the cause cannot be given, be omitted.” These words “ so essential to the action or defence” are not in the statute of Elizabeth, and here are two important particulars in which they differ. Under this last mentioned statute the courts in England were certainly very astute in finding out defects of substance, which really seem to have very little substance in them. Thus, they held that the omission of the words vi et armis, contra pacem &c. were not aided by that statute, which cured only matters of form, thus making them matters of substance. 1 Wms. Saund. 81. note 1. So, the conclusions before mentioned, to the country, or with a verification, when erroneous, were decided to be matters of substance. To remedy these adjudications the statute of 4 and 5 Ann. ch. 16. was enacted. That statute omits the words want of form, and uses the words imperfection, omission, or defect, and declares that *277 they are not to be regarded except on special demurrers, “notwithstanding such imperfection, omission, or defect might have been heretofore taken to be matter of substance &c.” (evidently alluding to the before mentioned decisions) “so as sufficient matter appear on which the court may give judgment according to the very right of the cause.” It is apparent that our statute more nearly resembles this statute than the former: indeed, ours is stronger in its expressions than even this one of Anne. No defect, no imperfection, whether of form or substance, which is not specially alleged as cause of demurrer, shall be regarded by the court, unless there be an omission of something which is so essentia] to the plaintiff’s action, or so essential to the plaintiff’s defence, as that law and right cannot prevail. If there be an omission to aver that which constitutes the gist of the action, or the gist of the defence, then right and justice cannot be done, but the omission to conclude the plea, or replication, either one way or the other, is not so essential, as that judgment may not be given according to right and law. The next clause of the statute of Anne, runs much into detail: our statute avoids its prolixity, and has the rare merit of condensing two long clauses into one of half a dozen lines. As a farther proof that the statute of Anne was the foundation of ours, and that it was before the draftsman of the statute of 1789, ch. 28. (from which our present section is copied), I will state, that it had been adopted, with other english statutes of jeofails, by the legislature in November 1783, and continued to be the law of Virginia from that time to the enactment in 1789. Is it probable, that the legislature would reject this modern beneficial law, after having experienced its benefits, and go back to the more antiquated statute of Elizabeth, and adopt it with its barbarous constructions ? In further corroboration of this opinion, I refer to the remark of judge Roane, in Mantz v. Hendley, 2 Hen. & Munf. 314. who states, that our statute substantially agrees with the statutes of 27 Eliz. and 4 and 5 Ann. I have referred to these statutes in the english statutes at large, but they are transcribed in 1 Chitt. plead. 640. If then our *278 law is substantially the same with that of Anne, it follows that the decisions before mentioned, which that statute iutended to abrogate, are not in force here.
Before I quit this subject, I will state that in the case of Mantz v. Hendley, judge Roane says, that this statute of jeofails extends only to such demurrers as go to the action, and not to demurrers to pleas in abatement; and a similar remark was made by Bayley, J. in Lloyd v. Williams, 2 Mau. & Selw. 485. But Chitty (vol. 2. p. 679.) in a note, speaks of a special demurrer to a plea in abatement. As that question is not before us, it is unnecessary to give any opinion on it.
■ There is another question in this case which has been much canvassed in conference, and on which I have examined the authorities. The strong inclination, if not conviction of my mind, is, that the conclusion in this case, to the country, is the correct one. I shall, however, say nothing on the subject, blit refer to the opinions which my brethren will express on it. I am for affirming the judgment.
Carr, J.
The first objection I shall notice, is that which was taken to the form of the replication. It was said, that this replication states affirmative matter, and that, therefore, the conclusion to the country was wrong; and the case of Buck v. Fouchee was relied on to shew, that this error may be taken advantage of on general demurrer.
Let us first enquire, whether the conclusion be in truth erroneous? The end of pleading is certainty: to arrive at this, the parties make up an issue, which Coke says, is “ a single, certain and material point, issuing out of the allegations or pleas of the plaintiff and defendant, consisting, regularly, upon an affirmative and negative”—“ Some issues be good, upon matter affirmative and negative, albeit the affirmative and negative, be not in precise words. As, in debt for rent upon a lease for years, the defendant pleads that the plaintiff had nothing at the time of the lease made; the plaintiff replieth, that he was seised in fee; this is a good issue.” Co. Litt. 126. a. Alexander v. Lane, Yelv. Rep. *279 137. debt against an executor; he pleads nothing in his hands, except £ 10. which he retains for his own debt; replication, that he is executor in his own wrong, and has goods beyond the £ 10. and concludes with a verification: this replication -was demurred to, and the demurrer sustained. The court said, that the plaintiff might well reply that the defendant was executor de son tort, notwithstanding he had called him in his declaration executor, for there is no other form of declaration, as was adjudged in Coulter’s case, 5 Co. 30. but they were unanimous in deciding, that the defendant having denied having any goods, beyond £ 10. and the plaintiff having substantially affirmed it, this ought to come in issue, but cannot, for the ill conclusion. Trapaud v. Mercer, 2 Burr. 1022. is also a strong case upon this point. The case of Clark v. Glass (stated in a note 1 Wms. Saund. 103. a.) was this: debt on a bond; plea, that the defendant was in prison, and that the bond was given by duress; replication, that the defendant executed it of his own free will, and for a good and valuable consideration, absque hoc, that he executed it by duress of imprisonment, concluding with an averment; demurrer, shewing for cause, that it concluded with an averment, whereas it ought to conclude to the country: and it was held bad for that reason: and although it was urged for the plaintiff, that they could not take issue on the whole plea, as the fact was, that the party was actually in prison, but gave the bond for a just debt, and therefore, the plaintiff was under a necessity of traversing its being given by duress, as he could not deny the imprisonment; yet the court answered, that he might have replied in the common form, and though he was in prison, yet if the bond was not given by duress, the issue must be for him; for the duress is the substance of the plea. From these cases it seems clear, that though there be no formal negative and affirmative, yet wherever the replication denies the whole substance of the plea, the conclusion may be to the country. 'Williams (in the same note) says, “ It may be laid down as a safe rule that where a defendant cannot take any new or other issue, in his rejoinder, than the *280 matter lie had pleaded before, without a departure from his plea,—or where the issue on the rejoinder would be the same in substance, as on the plea,—the plaintiff ought to conclude to the country.” Let us try the pleading before us, by this test. What is the substance of the defendant’s plea ? that the sheriff, after a voluntary escape, did, by color of his office, and in virtue of the same execution, illegally recapture the debtor. To this the plaintiff (admitting the voluntary escape) replies, that before the return of the execution, and while it was in force, the debtor, voluntarily returned, into the custody of the sheriff, and surrendered himself in execution, to be held by the sheriff by virtue thereof, and that the sheriff so held him, till he executed the prison-bounds bond. To my understanding this is a direct denial of the whole substance of the plea, and tenders the issue, whether the debtor was recaptured, or surrendered himself And so, I have little doubt, thought the pleader who demurred to it generally; meaning thereby, not to raise a question about the form, but the substantial validity of the pleading. Suppose it had concluded with a verification, could the defendant in his rejoinder have taken any new issue, without a departure ? Must not the issue on the rejoinder have been substantially the same with that on the plea? Must he not have rejoined, that the defendant did not voluntarily surrender himself, but was recaptured hy the sheriff? I cannot perceive any other rejoinder open to him, without a departure from his plea.
As to the case of Buck v. Fouchee, it may not be amiss to say a word, by way of explanation. There were two arguments of that case. On the first, the court, without deciding that the plea was in abatement, but (as I conclude from my own note) taking it for a plea in bar, decided, that it tendered no issue, but avoided the matter in the sci. fa. by new matter, and, therefore, was bad on general demurrer, in concluding to the country. A new argument was asked by the counsel for the appellant, and it was a very elaborate one. The great stress of this argument was upon the ■plea,—whether it was in bar or abatementl and whether the *281 conclusion was correct 1 The opinion of the court was decisively made up, that the plea alleged matter in bar, which in its nature was matter in abatement, and therefore that it was clearly bad on general demurrer, for the reason assigned by lord Holt in Crosse v. Bilson, 2 Ld. Raym. 1016. that a plea in bar, admitting that the suit is well brought, and opposing nothing but matter in abatement, to the plaintiff’s demand, judgment final should be given for the plaintiff. This is the ground first taken by our lamented brother Green, in whose opinion the court concurred generally. His second ground of objection to the plea, was one in which we all, I think, concurred; and these were the grounds of the judgment. They conclusively mark the plea as containing matter in abatement only. But lie then proceeded, “If however, it were admitted, that the matter of this plea was pleadable in bar, and well pleaded in other respects, the conclusion to the country, was an error in substance, and fatal on general demurrer.” It will be seen from the manner in which this is put, that it was not considered as a point before the court, or on which the judgment rested; and of course, not one to which the general concurrence of the judges extended. I state this, not as indicating any opinion, whether the position thus taken be correct or not, but simply for explanation.
I come now to the question, whether this replication presents a substantive answer to the plea. I think it does. When a plaintiff gets a judgment against his debtor, he has choice to take the lands, goods or body: and his interest is a pretty strong guarantee, that he will resort to that, which is most likely to produce the money. If he takes a ca. sa. and it is levied, it is the duty of the sheriff to hold the debtor in safe and close custody. If the plaintiff discharge him from execution, his judgment is satisfied; but no negligence of the sheriff, or collusion between him and the prisoner, can affect the plaintiff’s rights. If there bo a tortious or negligent escape, the sheriff must make fresh pursuit. If this officer suffers a voluntary escape, he can make no pursuit or recaption. But the plaintiff may either retake the prisoner *282 by escape warrant, or hold the sheriff liable. In the case before us, there was a voluntary escape, and a voluntary surrender into custody, under which the prison-bounds bond was taken. It was insisted, that, after the escape, the exeCU(jjon wag functus officio; that the sheriff could not by virtue ,of it, recapture the prisoner, nor receive him upon a voluntary surrender; that, indeed, the prisoner could not be again in execution, even at the election of the plaintiff, without new process; and that to hold him upon a surrender, was a trespass,—a violation of personal liberty, which no after . assent of the creditor could cure. I readily admit, that, if the holding of the prisoner on a voluntary surrender, was a trespass, a false imprisonment in the sheriff, no subsequent assent of the plaintiff could cure it. Let us recur to the authorities.' First stands the case of Trevilian v. Ld. Roberts, reported in Roue’s Abridgment. He has given us two reports of it, first under the head of Audita Querela, 1 Roll. Abr. 307. and again under the head of Execution, Id. 902. They are both very accurately translated, in 3 Vin. Abr. Audita Querela. D. pl. 4. p. 326. 11 Id. Execution. U. a. pl. 8. p. 26. The reports differ a little; but the chief difference between the two reports, is, that in one it is said the prisoner after the voluntary escape returned to prison; in the other, that the sheriff retook him. I consider the case a decisive authority. No subsequent ca.se, that I have seen, impugns it in the slightest degree, and many refer to it as express authority. It establishes it as clear law, that if after a voluntary escape, the prisoner return to prison, he shall be in execution at the suit of the creditor; not after the creditor has made his election, nor because he has made his election; hut because he has the right to elect to pursue his debtor, and because it is necessary to the, effectual exercise of that right, that the debtor should be detained in custody. The case of James v. Pierce is reported both by Venir is and Levinz; (Vent. 269. 2 Ley. 132.) It was an action against the warden of the fleet for an escape. There was a special verdict, finding that the prisoner had committed a voluntary escape in the time of the former warden, but had returned to the *283 fleet, and was in when the defendant became warden, who suffered him again to escape. It was insisted, that there being once an escape, the prisoner could not be in execution again without new process; and whether he was so absolutely discharged by the first escape, that he could not be again in execution, was the question? And upon the first argument, and on the authority of the case in Rolle, the court was of opinion, “ that notwithstanding the first voluntary escape, when the prisoner was in prison again, he was so far in execution, that the plaintiff hath election either to take him as now in execution, and so charge the new warden, for the last escape, or to admit him out of execution and charge the old wardenand so, by the opinion of the whole court, judgment was given for the plaintiff; and the Sheriff of Essex’s case, Hob. 202. was denied to be law. Here is an unanimous opinion of the court (Hale at their head) upon the very point. The case of Lenthall v. Lenthall, 2 Lev. 109. was decided by the same court, and is precisely like this. The marshal suffered a voluntary escape of a prisoner; he returned to prison; the marshal died ; his son succeeded to the office, suffered the prisoner again to escape, and was sued for it. It was argued for the defendant (the very argument in the case before us) that after the voluntary escape by the father, he could not take him again in execution, though the plaintiff himself might, if the escape were without his consent ; and though he returned to prison, yet he was not thereby a prisoner, neither could either the father or the son detain him there. But the whole court (Hale, Twisden, Wylde and Rainsford) gave judgment for the plaintiff; again re-' cognizing the case in Rolle, and pronouncing that in Hobart not to be law. To shew the point and force of this reprobation of Hobart’s case, it may not be amiss to state it; I shall use his own words: “ Before me at Guildhall, upon an action of debt against the sheriff of Essex, upon an escape, it fell out thus upon evidence; that the prisoner having been in execution, was willingly let go out of prison by the goaler, and then come into the goal again, and so remained in the goal, till the time of another she *284 riff, and then escaped, whereupon this action was brought. And I directed, that this sheriff was not answerable to this action; for when the prisoner was let to go abroad voluntarily by the goaler, the execution was utterly discharged, so as he could not lawfully be taken again, nor judged in execution by law, though the party would yield himself unto it, or the creditor to allow him. And, therefore, the next sheriff cannot be chargeable with him, nor answerable for him as in execution.” We see in these differing cases, the ground on which each judgment rests. In the first, the court thought, that notwithstanding the voluntary escape, when the prisoner was in prison again, he was so far in execution, that the plaintiff had election to take him as now in execution to him. In the second, lord Hobart thought, that by the voluntary escape, the execution was utterly discharged, so that the prisoner could not lawfully be taken again, nor judged in execution by law, though he should yield himself unto it, or the creditor to allow him. In neither, did the court touch upon the reason on which, it was contended at the bar, that these judgments were founded, viz.—that the prisoner being turned over to the second officer, he could not be permitted to judge of the propriety of his imprisonment, but must hold him till discharged by law. One more case,— Grant v. Southers, 6 Mod. 183. Grant had been in custody of a former marshal, who voluntarily suffered him to escape; Grant, afterwards, voluntarily returned, and being found in custody by' the succeeding marshal, was detained by him; whereupon Grant brought an action for false imprisonment. The court granted an imparlance till the next term, affirming, at the same time, that it was lawful to detain him, and that to suffer him to go at large, would be an escape in the second marshal, and that Hale, chief justice, had been of the same opinion. I consider this as a very strong case, affirming the doctrine, that by the voluntary return, the prisoner is in execution, without any previous act of assent, affirmance, or election by the creditor. Here, there was none such. The prisoner himself sues for false imprisonment ; and it is adjudged that he was lawfully held. To *285 this mass of authority, what is opposed? not one single case, except that from Hobart, in which the principle comes properly in question. The case of Ravenscroft v. Eyles, 2 Wils. 294. presented exclusively the question, whether an action on the case lay against the warden for an escape on mesne process, the plaintiff having proceeded to final judgment against the prisoner, after he knew that the warden had voluntarily permitted him to escape ? The court decided tire case before it, very properly; but the chief justice, in his reasoning, went into matter extra-judicial; and his dictum as to that, is of no weight, if it be taken as contradicting the adjudged cases cited. In no other of the english or New York cases, is the question raised by the creditor, claiming against either the officer or the debtor; and none but such a case can fairly try the principle. But how could the election of the creditor be more promptly made than it was here ? By our statute, the prisoner has a right to the bounds on giving bond; and it is only on his escape, that the sheriff is directed to give notice to the plaintiff, and assign him the bond. Here the bond was executed in March 1823, assigned by the sheriff in April 1823, and this suit brought in June: surely, there was no delay.
I am, therefore, upon every ground, for affirming the judgment.
Caukrl and Brooke, J. concurred.
Tucker, P.
It is unnecessary in this case, to go into an examination of many of the questions which were discussed at the bar. It is better to look to the precise point, without embarrassing the case with collateral doctrines which have little bearing upon it.
The action is brought upon a prison-bounds bond by the creditor, as assignee of the sheriff. The defence is, that the bond is void, having been taken by the sheriff from the debtor when unlawfully detained as a prisoner. He had been taken upon a ca. sa., had been voluntarily set at liberty by the sheriff aud had voluntarily returned into custody be *286 fore the execution of the bond. The creditor had no agency whatever in the transaction, until the institution of the suit on this bond. And it is contended, that notwithstanding the voluntary return of the prisoner into execution, he was not lawfully in custody, as the plaintiff had issued no new process against him, nor had done any act to hold him on the old process.
’ It cannot be questioned, that notwithstanding the voluntary discharge by the sheriff, the creditor was entitled, at common law, to his scire facias quare executionem non and to the award of process to retake the prisoner. Allanson v. Butler, 1 Lev. 211. The statute 8 and 9 Will. 3. seems to have facilitated the proceeding of the creditor, by authorizing him to sue out a new ca. sa. without the necessity of a scire facias. Lord Hale seems to think the scire facias was not essential, but that the creditor might, even in his day, have taken the prisoner without it. If this be so, the statute was only declaratory of the common law. Our statute authorizes the creditor to procure an escape warrant from a justice of the peace for the purpose of retaking the fugitive. When retaken upon this process, he is in execution upon the original ca. sa. The effect of the escape warrant is merely to bring him back to the custody of the law, and he is then held by virtue of the original authority by which he had been imprisoned. So too, if the debtor tortiously escape from the custody of the officer, the officer is entitled to retake him upon fresh pursuit, and when he does so, he holds him in execution under the original ca. sa. and not by virtue of any new authority. So too, I conceive, where there has been a tortious escape and voluntary return, the debtor is at once, in custody, for that is equivalent to a retaking upon fresh pursuit, and no act or election is necessary on the part of the creditor.
Now, I do not perceive, that the case of a voluntary return after a permissive escape by the sheriff, should place the creditor in a different situation, ,or require from him any act declaring his election to hold the party in execution. Neither reason nor authority justifies any such position. The *287 creditor has elected the ca. sa. as his remedy. lie looks to the confinement of his debtor for the means of enforcing payment of his debt. He has placed him in that confinement. Why shall we infer, that he prefers, after the voluntary return of the debtor, to charge the sheriff, against whom the remedy may be and generally is precarious, rather than to hold the body of the defendant, who may thus be compelled to surrender liis. effects. Is not the contrary to be presumed, until his election shall be manifested, to consider the defendant as no longer in custody '!■ He may, indeed, elect to sue the sheriff, but until he does elect to do so, he must be considered as admitting the debtor to be again in execution on the former process. If the person be in jail, says Ratcliffe, J. 2 Johns. Ca. 6. on a voluntary return, and nothing be done to determine the plaintiff’s election to substitute the sheriff as his debtor, it follows, of course, that the prisoner is again in execution at the suit of the plaintiff. This is, indeed, not authority for us, but it seems to me to be sound sense and reason. The plaintiff has done nothing since his original act of suing out his ca. sa. By that act he had shewn his intention and election to look to the “body of his pledge,” as the means of making his debt. He had a right to do this, and he has done it. He has done nothing since to divest him of this right to hold the body, or to indicate his intention to waive it, and to look to the sheriff. He cannot be divested of it by the acts of either the sheriff or the debtor; nor can he be presumed to look to the sheriff, and to abandon his pursuit of the debtor, merely because of the sheriff’s responsibility. When has it been introduced as a principle into the law, that where a sheriff has made himself responsible to the plaintiff, the plaintiff is at once to be presumed to abandon his demand against the debtor, unless he does some act to indicate his design to insist upon it? I am not aware of the existence of such a principle. It was at one time contended for, indeed, but has for centuries been overruled. 1 Show. 174. Hob. 202. 2 Lev. 109. 132.
But admitting the doctrine, what is to be done by the plaintiff? By the common law, if the defendant did not *288 return into execution, the plaintiff might sue out a new exe- . , . cution; and by our statute he may sue ail escape warrant. But can he do this when the defendant is quietly in custody ? Can the party swear, that the defendant has escaped, when jg jn fact jn (.jie shei'iif»s hands? Can he subject the defendant to the heavy penalty of confinement “ without bail or mainprize,” when the defendant has quietly returned himself into custody of the officer ? Suppose, as in the case of Dole v. Moulton, 2 Johns. Ca. 205. the bounds are an imaginary line, and the defendant walks accidentally a few feet over the prescribed limits, and immediately walks back again ; can he be subjected to be treated as a fugitive from custody ?
Suppose the jail doors to be open, or the prisoner entrusted with the keys for a short time (which I have often myself witnessed, and which has been considered an escape in law, though the prisoner does not leave the jail for a moment); is the jailor to be considered as a trespasser, if he afterwards locks the door, and keeps the keys himself? Is the debtor out of lawful custody, and subject to an escape warrant? Is the plaintiff to lose the lien of his ca. sa. because he has not affirmed him to be in execution, when, in fact, he knew nothing of the escape?
Again, cui bono must the plaintiff sue out process, or get an escape warrant, against a man who, having escaped for an hour, returns himself to custody ? Unless we adopt, and without any good reason, the notion that he is not in custody, the new process or escape warrant would be useless and vain. Pressed by these difficulties, doubtless, there are some loose dicta in the New York cases which intimate, that where there has been a voluntary return, there must be notice given by the plaintiff of his election to hold, or the sheriff cannot detain the prisoner; per Kent, J. in Lansing v. Fleet, 2 Johns. Ca. 13.: or he must affirm him still to be in execution; per Benson, J. Id. 15. and per Spencer (on the authority of these dicta) in Thompson v. Lockwood, 15 Johns. Rep. 259. I know of nothing upon which to rest such a position. The cases cited by Kent J. from 1 Vent. *289 269. and 2 Wils. 294. I shall hereafter examine. At present, it, is my purpose to ask, after what form this notice, or affirmation of an election to hold the prisoner in execution, is to be given or made? And at what time? And what notice is to be given of the fact of escape, so as to put the creditor upon the duty of giving notice to hold the debtor, or of affirming him still to be in execution ? For it is obvious, that as the plaintiff may reside at a distance, he may know nothing of the escape or of the return. If a sheriff should permit a Virginia debtor of a New Norlc creditor, to go out of custody for an hour, and if upon his voluntary return, he cannot be considered in custody, until the plaintiff has given his notice or made his affirmation, the consequence may be, that the debtor may abscond before this affirmation is known to be necessary. Nay more, the sheriff and the debtor having connived, no information is to be expected from them. New writs of ea. sa. in the mean time may be levied by other creditors, and the debtor may take the insolvent oath and deliver up his effects. If he be considered in execution upon the first ca. sa. the first creditor will have the preference, but if he be considered as not in execution, because the first creditor has not affirmed him to be in execution, then he loses his priority, and the whole property is swept by the junior executions. I cannot believe, that there is any established principle, which can lead to such absurd and pernicious consequences. I proceed, however, to examine the cases on the subject, which I think will be found nowise to sustain the position that has been taken.
The first case to which I shall refer, is James v. Pierce, as reported 1 Ventr. 269. This case contains some expressions attributed to lord Hale, which are supposed to favor the idea, that the prisoner who is detained by the jailor after a voluntary escape, may maintain trespass as against him. It is, nevertheless, decidedly an authority in support of the position, that the voluntary return of the prisoner into custody, as between the plaintiff and the debtor, places him again in custody to every intent. In that case, the warden of the fleet prison permitted the debtor to escape. He after- *290 wards'returned into custody; the defendant Pierce was made warden in place of the former warden, and the prisoner was turned over to him with other prisoners, and afterwards again suffered to escape; and the question was, sayg ^{le reporter, whether he was so in execution upon his return, as that the escape in the new warden’s time would entitle the plaintiff to his action ? And judgment was rendered for the plaintiff; the court thus affirming, by its judgment, that he was, after his return, so in execution, that the custody of him under the execution passed to the second warden ; for it was impossible, that the first warden could pass to the second warden the right to detain, unless he had that right himself: non det qui non habet. This case is also reported in 2 Lev. 132. where it is said, the prisoner, after his return, was so far in execution, that the plaintiff had election either to take him (i. e. consider him) as now in execution, and so charge the new warden for the last escape, or to admit him out of execution, and charge the old warden :• but he shall not be obliged to do so, for the old warden may be dead, or perhaps not responsible. Here, his election is spoken of; but it is worthy of note, that it is not said the defendant is not in execution until election. On the contrary, there never had been an election, save that evinced by bringing the action; and as that was posteriour to the turning over the prisoners, and as the former warden was decided to have had the custody, he must have had it before the election. The election, then, either related back to the date of the voluntary return, or (according to my understanding of the matter) the plaintiff, without any act on his part, was taken to admit him to be in execution until his election to the contrary: for, in all cases where a party has an election, the existing status must continue until a contrary will is declared.
Such, then, is the case of James v. Pierce. Lord Hale’s language, however, has been relied on, as saying that the prisoner who returned voluntarily after a voluntary escape, might maintain trespass against the jailor who detained him. I do not so understand him, nor do I think that that is the *291 law. Tlie sheriff, indeed, who has permitted the escape, cannot retake the prisoner, and if he does, it is a trespass. But I see no reason for considering it a trespass to receive him, when he voluntarily surrenders himself in execution, to avoid the consequences of an escape warrant. Nor does lord Hale take any such position. His words are—“ Though, if the prisoner should bring trespass against a jailor that detained him after a voluntary escape, he could not defend it; the mischief would be exceeding great, if the sheriff might, at his pleasure, put the plaintiff to an action only against himself.” Doubtless, the reporter has very awkwardly reported the language of the judge. I understand him to speak of the sheriff’s liability for detaining merely, upon a voluntary return after a permissive escape, as hypothetical. He means to say, that admitting that liability, it would be a great mischief if the creditor should, by the act of the sheriff, be deprived of his redress against the debtor. But I do not understand him to affirm such liability of the sheriff to a debtor who voluntarily surrenders himself in execution.
The next case is Ravenscroft v. Eyles, 2 Wils. 294. There, the debtor had been committed for want of bail. He, afterwards and before judgment, was permitted by the sheriff to go at large, and on the same day returned into custody. The action was by the creditor for damages. The action had attached by the escape, and was not taken away by the voluntary return, the escape having been permissive. The plaintiff was declared to be entitled (not to a judgment for his whole debt, as in case of escape on final process, but) to such damages as the jury had found to have been actually incurred by him. It was said, when a jailor permits a voluntary escape, he commits a tort, and the plaintiff has a right to recover such damages as a jury may please to give for the same. The prisoner is instantly at large, and the jailor cannot afterwards retake and detain him for the same matter, though the plaintiff may retake him by an escape warrant,—but has his option to proceed as he pleases, either against the debtor, or against the warden. The debtor is not now in execution at the plaintiff’s suit, though he be locked *292 up every night, and though the plaintiff might lawfully proceed to judgment against him, yet he could not charge him in execution. This last expression is in conflict, I think, with the whole current of decisions, since the repudiation of tjje 0jd c]octrine laid down in early cases, that the sheriff’s discharge was a discharge of the judgment, whether the plaintiff assented to it or not: and I have no doubt that there is some mistake in the report.
Taking this case for as much as the dictum it contains is worth, let us now proceed to the other cases. In 1 Roll. Abr. 902. it is said, “ If A. be in execution at the suit of B. and escape with the consent of the sheriff, and afterwards the sheriff retakes him and keeps him in prison, he shall be in execution to B. for though B. may bring an action against the sheriff for this voluntary escape, yet that is at his own election, and the party in execution shall not by his own wrong put B. to his action against the sheriff, contrary to his will; and it may be, the sheriff is not able to give him recompense. So adjudged on an audita querela by A. (the debtor) against B. (the creditor) brought on this surmise.” Here, again, election is spoken of; but it is distinctly shewn, that the party, as soon as retaken, is considered in execution to B. until the election to the contrary. Is the case less strong when he surrenders voluntarily? In 1 Roll. 307. it is said, “ If A. be in execution at the suit of B. and A. escape with the consent of the sheriff, and afterwards he returns to the prison, and the sheriff keeps him in prison upon the said execution, A. shall not be discharged by audita querela; for B. has it still in his election to have him in execution at his suit, and shall not be compelled to take his remedy against the sheriff, who perhaps may be worth nothing.” (See 1 Bac. Abr. Audita Querela. B. p. 311.) Here, we see the party had been kept in execution; we see that custody recognized as lawful, and relief against it refused. Yet no notice of election is even hinted at, as having been necessary, or as having been given; and no affirmation of an election appears. It stands upon the plain ground, that he who had broken jail, and afterwards voluntarily returned, *293 is considered as in custody under the former execution, until an election to consider him at large, appeared.
Next comes the case of Lenthall v. Lenthall, 2 Lev. 109. where there was a voluntary escape from the marshal of the king’s bench by whose death the office descended on his son. Before the father’s death, the prisoner returned, and was there actually in prison at the time of his death, and so continued in the son’s time until he suffered him to escape again. The action was by the creditor against him. His defence was that though the defendant returned to prison, he tvas not thereby a prisoner, neither could the father or the son detain him there. Judgment was given for the plaintiff. The remarks already made on the case of James v. Pierce apply equally to this. The judgment affirms the son to have had a lawful custody, which he could not have had, if the debtor had not been lawfully in execution in the father’s lifetime, since the son received the custody from the father, by the descent of the office.
Next comes Grant v. Southers, 6 Mod. 183. Grant liad been in custody of the former marshal who suffered him to escape. He afterwards returned into his custody voluntarily, and being found in custody by the succeeding marshal, was detained by him; upon which Grant brought an action of false imprisonment against the new marshal. The court affirmed, that it was lawful to detain him, and that to suffer him to go at large, would be an escape in the second marshal. This case is conclusive. The escape was voluntary, the return was voluntary; there was no notice of election,—no affirmation,—and the creditor was not a party in the case, so that his election could not be implied from any act whatever. Yet the execution was considered as continuing, and the party was held to be lawfully in execution.
In 3 Com. Dig. Escape. E. pp. 582, 3. it is said, “ if a person escapes and afterwards returns to the prison, the plaintiff may admit him in execution though he has a remedy against the sheriff, and this though the escape was voluntary by the goaler, hut without the plaintiff’s consent.”
*294 From these authorities, I am most clearly of opinion, that by the voluntary return of the prisoner after a voluntary escape, he is again in execution as completely as before the escape; except that the plaintiff may elect to consider him at ]arg6) ]3y proceeding against the sheriff. The imprisonment, therefore, in this case, as set forth in the pleadings, was lawful, and the bond a legal bond.
I have said nothing of the New York case which has been cited, because with the same lights before us, it is more proper that we should pronounce the result of our own reflections, than follow the opinion of the tribunal of another state, however enlightened and respectable. I may, however, add, that I concur in the general views of the doctrines we have been discussing with justice Ratcliffe, rather than with those of the majority of the court, yet I am inclined to think the judgment in that case was right.
I have said nothing of the election on the part of the creditor in this case, as having been distinctly evinced by his suit upon the prison-bounds bond; because I do not think such election necessary. Carthrae was his prisoner, until the creditor should elect to consider him otherwise.
An objection has been raised to the conclusion of the plea. I am not sure, that the replication does not substantially tender an issue. The plea alleges, that the sheriff illegally took the-debtor Carthrae ; to which the replication answers, that Carthrae voluntarily returned into custody. Here, the parties are at issue, upon the point on which the case turns; and though the replication contains an affirmative pregnant, yet that can only be objected to on special demurrer. 5 Bac. Abr. Pleas and Pleadings. I. 6. p. 419. It was formerly held, indeed, that two affirmatives could not make an issue, but that there must be an affirmative and negative. But that has been long since overruled, for two affirmatives may make and often do make an issue. All that is necessary is, that the second affirmative be so contrary to the first, that the first cannot in any degree be true. Thus, in assumpsit, defendant pleads infancy, and verifies; plaintiff replies full age, and concludes to the country. In a writ of right, the tenant *295 says he has better right; and the demandant by his replication says he has better right, and concludes to the country. So, in debt on bond, and duress of imprisonment pleaded; replication, that defendant was at large, when he executed the bond, concluding to the country; to which there was a demurrer and judgment for plaintiff. 2 Strange 1177. 1 Wils. 6. It is not even necessary to add a traverse. So, a replication to the statute of limitations, that the plaintiff was in France and so within the exception; rejoinder, that he was within the realm, makes the issue. So, plea of fully administered; replication that defendant hath assets to the value, makes the issue. 1 Wils. 6. 7. 1 Wms. Saun. 103. a.
Lastly, even if the conclusion to the country be wrong, it is, I think, such an error as should have been specially assigned. 'Why did not the defendant point out this error, if it be one, so as to enable him to rejoin, if he desired to do so 1 Instead of this, he demurs generally. Now, on general demurrer, matters of substance only can be objected; matters of form must be specially assigned ; and if this be not mere matter of form, I am at a loss to know what is so. Upon this, however, I shall add nothing to the satisfactory remarks of judge JRrockenbrough in relation to it.
Upon the whole I am clearly of opinion to affirm the judgment.
Judgment affirmed.